UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

STAR A BROTT,

        Plaintiff,

v.                                                      Case No. 22-cv-0152-bhl

KILOLO KIJAKAZI, Acting Commissioner for
Social Security Administration,

        Defendant.

## DECISION AND ORDER

      This is the latest chapter in the long saga of Plaintiff Star A. Brott's application for Social Security Disability (SSD) and Disability Insurance Benefits (DIB). Unfortunately, despite more than a decade of proceedings, during which five different individuals have served as the Commissioner of Social Security and the parties have made three trips to federal court, errors persist. Accordingly, the case will again be remanded. The Court implores the Social Security Administration to, *promptly* and *precisely*, resolve this matter on its fifth try. *See Dawn T. v. Saul*, No. 18-cv-50101, 2019 WL 4014240, at *2 (N.D. Ill. Aug. 26, 2019) (questioning whether an administrative law judge actually read the Court's remand order because his new decision repeated the mistakes the order identified). Because the Acting Commissioner's decision repeats the mistakes of the past, this case must be remanded for further consideration.

### PROCEDURAL BACKGROUND

      Brott first filed her claim for SSD and DIB on January 22, 2010. (ECF No. 13 at 5.) It was quickly denied initially and upon reconsideration. (*Id.*) For the next decade, Brott drifted through multiple appeals and endured three blundersome hearings. (*Id.*) At a fourth, convened pursuant to this Court's order in *Brott v. Berryhill*, No. 18-C-255, 2019 WL 1435930 (E.D. Wis. Mar. 29, 2019) (Griesbach, J.), an administrative law judge (ALJ) again found Brott "not disabled." The Appeals Council denied her request for review, and this action followed. (*Id.*)

## FACTUAL BACKGROUND

At the time of her fourth hearing before the ALJ, Brott was 57 and living with her in-laws, husband, daughter, and granddaughter in Green Bay, Wisconsin. (ECF No. 12-15 at 50.) She alleged a disability onset date of December 1, 2003, and her date last insured was March 31, 2008. (*Id.* at 15.) The ALJ determined, during that period, Brott suffered from wrist impairments, bilateral degenerative joint disease of the shoulders, headaches, asthma/chronic obstructive pulmonary disease (COPD), obesity, bipolar disorder, posttraumatic stress disorder (PTSD), anxiety disorder, and borderline personality disorder. (*Id.*) Brott testified that, at her worst, she "spent the majority of [her] time in [her] bedroom with [her] door shut." (*Id.* at 54.) She also stated that she did not leave her house unless she had to. (*Id.* at 56.)

## LEGAL STANDARD

The Commissioner's final decision on the denial of benefits will be upheld "if the ALJ applied the correct legal standards and supported his decision with substantial evidence." *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011) (citing 42 U.S.C. §405(g)). Substantial evidence is not conclusive evidence; it is merely "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). The Supreme Court has instructed that "the threshold for such evidentiary sufficiency is not high." *Id.*

In reviewing the entire record, this Court "does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility." *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Judicial review is limited to the rationales offered by the ALJ. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93-95 (1943)).

## ANALYSIS

To make this order as plain as possible, the Court will address only Brott's meritorious argument: the ALJ, again, cherry-picked the evidence to justify affording the opinions of Brott's treating physician's lesser weight. Additionally, the Court will consider Brott's request, in light of considerable, inexplicable delays, to remand with instructions that the Acting Commissioner award benefits outright.

## I. The ALJ Failed to Provide Good Reasons for Giving the Opinions of Brott's Treating Physicians Lesser Weight.

Brott's case relies heavily on the opinions of treating physicians Dr. Paul Burney and Dr. Peter Fischer. Based on Brott's mental health struggles, Dr. Burney assessed extreme limitations in activities of daily living; maintaining social functioning; and concentration, persistence, and pace. (ECF No. 12-8 at 788.) Dr. Fischer found Brott moderately to severely limited in her ability to respond appropriately to supervision, coworkers, and routine work pressures and changes in a work setting. (*Id.* at 42.) This Court reversed and remanded the ALJ's previous decision, in part, because, to discredit these physicians, the ALJ cherry-picked from a handful of "good days" and "cursorily dismiss[ed] the 'bad days' without adequate explanation." *Brott v. Berryhill*, 2019 WL 1435930, at *4. The ALJ appears to have thought the Court took issue with the dates he picked rather than his method for picking them. His new decision simply identifies two different, presumably more representative, "good days" and highlights those instead. (ECF No. 12-15 at 25.) But the ALJ's job is not to find the mythical median day and measure it against a doctor's opinion. As courts in this circuit have repeated ad nauseam, "a person who suffers from a mental illness will have better days and worse days, so a snapshot of any single moment says little about her overall condition." *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011). This is especially true for someone with bipolar disorder whose diagnosis explicitly contemplates peaks and valleys. *See Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011).

The ALJ in this case emphasized the disconnect between Dr. Burney's extreme opinion and his relatively mundane treatment notes from February and April 2008. (ECF No. 12-15 at 25.) Those were somewhat good days, on which, to the untrained eye, Brott's conditions might have been imperceptible. But the ALJ failed to address Dr. Burney's well-documented descriptions of days when Brott's disabilities presented more seriously. For example, the ALJ failed to address meaningfully Dr. Burney's January 4, 2008 assessment, when he first saw Brott during her third inpatient psychiatric hospitalization. (ECF No. 12-8 at 100); *see Voigt v. Colvin*, 781 F.3d 871, 876 (7th Cir. 2015) ("The institutionalization of the mentally ill is generally reserved for persons who are suicidal, otherwise violent, demented, or (for whatever reason) incapable of taking even elementary care of themselves.") The ALJ also sidestepped Dr. Burney's assessment just a month later, when he wrote: "I am concerned about this patient . . . because even with these high doses of medication, patient is hypomanic leaning towards manic, and there is a very real possibility that when we lower these medications, those symptoms could become worse." (ECF No. 12-8 at 442.)

Similarly, on June 18, 2008, Dr. Burney described "mixed symptoms with dysphoric mood, problems with racing thoughts, poor concentration, and subjective mood lability" and increased Brott's medication dosages. (*Id.* at 776.) During her fourth psychiatric hospitalization, in early 2009, Dr. Burney identified "fleeting suicidal thoughts" and "intense depression and anxiety symptoms." (*Id.* at 769.) He also opined that Brott would likely require future hospitalizations. (*Id.* at 763.) In early 2010, he described her diagnosis as "[b]ipolar disorder, type I, most recent episode depressed." (*Id.* at 749.) He noted that she had experienced "some suicidal thoughts recently" and augmented her medication. (*Id.*)

The ALJ lumped all of these serious assessments into a benign-sounding basket of "evidence showing hospitalizations for bipolar disorder and anxiety with symptoms that responded well to medication and quickly stabilized." (ECF No. 12-15 at 25.) This barely rephrases the prior, defective decision, which read: "Despite a few exacerbations, with adjustments to her medications and regular treatments in early 2008, [Brott] again reported overall improvement of her depressive and anxiety symptoms." (ECF No. 12-9 at 35.) In both instances, the ALJ's reluctance to engage with the particulars belies a certain doubt in his determinations. If Dr. Burney's treatment notes are the smoking gun the ALJ claims, then they ought to be worth more than a perfunctory mention. The Seventh Circuit has affirmed ALJs who discredit a doctor's opinion because it contradicts his treatment notes. *See Pavlicek v. Saul*, 994 F.3d 777, 783-84 (7th Cir. 2021); *Recha v. Saul*, 843 F. App'x 1, 5 (7th Cir. 2021); *Schmidt v. Astrue*, 496 F.3d 833, 842-43 (7th Cir. 2007); *Henke v. Astrue*, 498 F. App'x 636, 640 (7th Cir. 2012). But in each of those cases, the doctor's opinion radically diverged from the treatment notes, "which almost universally indicated" normal functioning. *Recha*, 843 F. App'x at 5. By contrast, Dr. Burney's notes "show that although [Brott] had improved with treatment, she nevertheless continued to frequently experience" mental health crises. *Scott*, 647 F.3d at 740. Simply put, Dr. Burney's treatment notes do not obviously undermine his opinion, and they certainly do not describe, as the ALJ claims, a patient whose symptoms were under control and whose mental illness was in remission. (ECF No. 12-15 at 25.) There is, thus, no substantial evidence to support the ALJ's decision to give Dr. Burney's opinion less weight.

The same basic analysis applies to Dr. Fischer. The ALJ gave Dr. Fischer's opinion less weight, in part, because he indicated that Brott struggled with agoraphobia at times, but "the treatment notes do not contain any reference to problems leaving home." (*Id.* at 26.) However, in

a note dated February 12, 2007, Provider Kim Knitter (who Dr. Fischer supervised) listed as one of Brott's treatment goals: "engage in previously avoided behavior (social) – exposure." (ECF No. 12-8 at 66.) Prior notes confirm that Brott's medical providers hoped to "minimize social withdrawal." (*Id.* at 68, 70, 73.)

The ALJ also concluded that "more than moderate limitations in responding to supervisors and coworkers and adapting to routine work stressors and changes in work setting" were "not supported by the evidence in the record including [Brott's] description of her activities of daily living, which included cooking, cleaning, doing arts and crafts, and caring for her mother and grandchildren." (ECF No. 12-15 at 26.) Nowhere is it explained how a claimant's affinity for certain daily activities, including crafts and cooking, somehow implicates her ability to respond to supervisors or adapt to changes in work setting. And outside of these insufficient rationales, the ALJ offers only another attempt to cherry-pick treatment notes and underscore the most optimistic. (*Id.* at 26.) For reasons already stated, this cannot rescue the decision. *See Punzio*, 630 F.3d at 710.

Defendant suggests that the ALJ properly relied on the opinion of Dr. Michael Lace, who testified at the most recent remand hearing and explained what he perceived as the deficiencies with Dr. Burney's and Dr. Fischer's opinions. But it is not enough to locate a dissenter in the ranks; the ALJ must still explain why the dissenting voice deserves priority. *See O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010). Here, that explanation relies on the correlation between Dr. Lace's opinion and the same cherry-picked treatment notes used to discredit Drs. Burney and Fischer. Obviously, the very error that Dr. Lace's opinion is advanced to correct cannot simultaneously justify his opinion. Even if it could, Dr. Lace's analysis is especially suspect. He testified that both treating physicians' opinions clashed with Global Assessment of Functioning (GAF) scores that "were generally within normal limits." (ECF No. 12-15 at 71, 73.) But the evidence he cites includes only three GAF scores assessed over the course of a single month in 2003. (ECF No. 12-8 at 7-8, 18.) And one of those scores was a 45, which indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." Matt Smith, *What is the Global Assessment of Functioning (GAF) Scale?*, WEBMD (Feb. 6, 2021), https://www.webmd.com/mental-health/gaf-scale-facts. GAF scores are not particularly relevant in Social Security cases. *See Denton v. Astrue*, 596 F.3d 419,

425 (7th Cir. 2010). But to the extent Dr. Lace invoked them to undermine Drs. Burney and Fischer, he did so clumsily. Additionally, Dr. Lace testified that Dr. Burney's extreme limitations were unsupported because "extreme limitations would be consistent with ongoing hospitalizations." (ECF No. 12-15 at 73.) Of course, the record includes evidence of multiple hospitalizations as well as notations indicating that Brott's most recent hospitalization would likely not be her last. (ECF No. 12-8 at 763.) Thus, Dr. Lace did no better than the ALJ in proffering good reasons to privilege his own opinion and discredit Drs. Burney and Fischer.

**II.     The Court Cannot Remand with Instructions to Award Benefits.**

Brott could be forgiven if the prospect of remand and a fifth hearing before an ALJ makes her feel a bit like Charlie Brown approaching a football. Past performance does not portend prompt and proper resolution. For obvious reasons, Brott would rather short-circuit the process and asks the Court to remand with instructions to award benefits outright. The Court shares Brott's frustration and agrees that she "has suffered considerable inexplicable delays." *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000). "An award of benefits is appropriate, however, only if all factual issues involved in the entitlement determination have been resolved and the resulting record supports only one conclusion—that the applicant qualifies for disability benefits." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011).

The record here could support an award of benefits, but it also contains "potentially conflicting evidence that might support the opposite conclusion if the ALJ could adequately explain his reasoning." *Id.* at 416. Given that, despite its desire to finally resolve this matter, the Court cannot remand with instructions to automatically award benefits. Instead, the case must be remanded for further proceedings consistent with this decision.

## CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that pursuant to sentence four of 42 U.S.C. §405(g), the Acting Commissioner's decision is reversed, and the case is remanded for further proceedings consistent with this opinion. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin on October 26, 2022.

s/ <i>Brett H. Ludwig</i><br>
BRETT H. LUDWIG<br>
United States District Judge